IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NANCY MORROW,

        Plaintiff,

  v.

PATRICK R. DONAHOE,
Postmaster General,

        Defendant.

Case No. 14 C 3614

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Postmaster General Patrick Donahoe's Motion for Summary Judgment [ECF No. 29]. For the reasons stated herein, the Motion is granted.

### I. BACKGROUND

This is *pro se* Plaintiff Nancy Morrow's sixth case against the Postmaster General, currently Patrick Donahoe, regarding her employment with the United States Postal Service ("USPS"). In this case, as in the others, Morrow complains of discrimination and retaliation. The previous five cases did not go well for Morrow; each case was either dismissed or summary judgment was granted in the Postmaster General's favor, and Morrow fares no better here. For ease of reference, the Court refers to

"Donahoe" as the Defendant, though he is sued only in his official capacity as the head of the USPS.

Preliminarily, the Court notes that it will deem Donahoe's facts as admitted because Morrow has failed to comply with Local Rule 56.1 in responding to the summary judgment motion. *Cracco v. Vitran Express, Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). Morrow's response, styled as a Motion itself, purports to respond to each of the Donahoe's numbered facts filed with his Summary Judgment Motion. Indeed, her response has the appearance of complying with the rule. But, upon further inspection, it is clear that the response is insufficient in important respects. First, in the instances where Morrow denies one of the Donahoe's facts, the bases for the denials are often incomprehensible. As one example, in response to Donahoe's fact regarding jurisdiction, Morrow responds as follows: "Admit the Postal Service has admits and pleaded to a lesser charges voluntarily and (Denys Age Discrimination only) and sex Defendant Exhibit B¶¶14 Morrow has filed Age Sex Discrimination Exhibit B¶¶13." (Pl.'s Resp. to Def.'s 56.1 Stmt. of Facts, ECF No. 36 at 2). The Court is not sure what Morrow means by this.

Second, and more importantly, the parts of the record to which Morrow cites in responding to Donahoe's facts often do not support her assertions. For example, Donahoe's Statement of Facts states that "[b]ecause of the 'high call in rate,' senior

United States Postal Service management advised all supervisors (including [Morrow's supervisor]) to send a letter to any employee who called in sick scheduling an investigatory interview." (Def.'s 56.1 Stmt. of Facts, ECF No. 31 ¶ 13). Morrow denies this fact, stating that "there was no excuse to target Morrow according [t]o unit guidelines for 3 days or less." (Pl.'s Resp. to Def.'s 56.1 Stmt. of Facts, ECF No. 36 at 3). But the guidelines to which Morrow points do not dispute the factual statement. Instead, the guidelines state that a supervisor may accept an employee's statement for why she called in sick without requiring any documentation. This guideline says nothing of whether there was a high call in rate or whether all USPS supervisors were told to schedule investigatory interviews with employees who called in sick during the relevant time. Because of Morrow's failure to follow Rule 56.1 in responding to Donahoe's Statement of Facts, the Court deems Donahoe's facts admitted. *Cracco,* 559 F.3d at 632. With that in mind, the facts in this case are as follows.

In July 2011, Morrow was a full-time window clerk at the USPS, working Sundays through Thursdays. From July 10 to July 14, Morrow was on a scheduled vacation. For the July 10 and July 11, Morrow was on "annual leave" status, but that changed to "leave without pay" status for July 12, 13, and 14 because Morrow ran out of paid annual leave time. Morrow then

had Friday, July 15 and Saturday, July 16 off as those were her regular days off, and she called in sick on the July 17, 18, and 19. For those latter three days, Morrow was paid for the remaining sick leave she had available and not paid for the rest.

A lot of employees called in sick during the same time that Morrow did — so many, in fact, that senior USPS management directed all supervisors, including Morrow's supervisor Alice Chatman ("Chatman"), to schedule interviews with the employees who called in sick during the same time. To that end, Chatman sent a letter to Morrow informing her of the date and time Morrow was scheduled to participate in an "investigatory interview" regarding her absences. The letter was drafted by the USPS Law Department, and Chatman sent the letter to the six other employees who also called in sick.

Morrow returned to work on July 20, but refused to participate in the investigatory interview. Upon her return, Morrow was supposed to obtain her time card from the Attendance Control Office, where her card was placed during her absence pursuant to USPS policy. She was also supposed to fill out "Request for or Notification of Absence" forms called "PS 3971 Forms." She did neither, and as a result, she had no time card to document her time and receive pay. But the USPS has another form, "PS 1260," which allows an employee to document time

worked and receive pay without a time card. Morrow completed a PS 1260 form for July 20, 21, and 22, and received pay for the hours she worked during those days. Morrow also worked on July 24, but failed to complete a PS 1260 form for that day. Consequently, she did not receive pay for July 24 until she finally completed a PS 1260 form on August 18, 2011.

On July 25, Morrow finally obtained her time card from the Attendance Control Office, but she still refused to complete PS 3971 forms for the days she called in sick. With her time card in hand, Morrow continued to work as usual until July 28, when she left work early. Although Morrow initially failed to complete a PS 3971 for leaving early, she eventually completed and submitted the form, which was approved.

On November 9, 2011, Morrow filed an internal EEO complaint with the USPS, alleging that the USPS retaliated against her by (1) sending her a "threatening" letter after she called in sick, (2) "withholding" her timecard, and (3) charging her "leave without pay" for all of July 24 and for the two hours she left early on July 28. An EEOC administrative law judge granted the USPS summary judgment, and the EEOC ultimately affirmed. After receiving her Right to Sue letter, Morrow filed her federal Complaint, and Donahoe now moves for summary judgment.

## II. <u>LEGAL STANDARD</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Material facts are those that affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party may meet its burden by showing "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). If the moving party satisfies its initial burden, the non-moving party must demonstrate with evidence "that a triable issue of fact remains on issues for which nonmovant bears the burden of proof." *Knight v. Wiseman,* 590 F.3d 458, 463–64 (7th Cir. 2009).

The judge's role at summary judgment is not to make credibility determinations or weigh the evidence. *Washington v. Haupert,* 481 F.3d 543, 550 (7th Cir. 2007). In determining whether a genuine issue of material fact exists, the Court construes all evidence in the light most favorable to the non-moving party. *See, Bellaver v. Quanex Corp.,* 200 F.3d 485, 491-92 (7th Cir. 2000).

## III. <u>ANALYSIS</u>

In addition to the retaliation claims contained in her EEOC complaint, Morrow's federal complaint also contains claims of age discrimination. Donahoe seeks summary judgment first on the age discrimination claim because Morrow failed to exhaust her administrative remedies and second on the retaliation claims because Morrow has not mustered enough evidence to prove her case. The Court will discuss each claim in turn.

### A. Morrow's Age Discrimination Claim

Donahoe argues that Morrow did not exhaust her administrative remedies as to her age discrimination claim because the only claims before the EEOC were claims for unlawful retaliation. Although hard to decipher, Morrow's response to Donahoe's Motion focuses on her proof as related to retaliation. Moreover, the EEOC decision attached to Morrow's Amended Complaint shows that the only claims before the EEOC were retaliation claims. Because Morrow did not bring a separate age discrimination claim before the EEOC and has not responded to this argument in her response, the Court grants Donahoe's Motion for Summary Judgment against Morrow as to her age discrimination claim. *McKenzie v. Ill. Dep't of Transp.,* 92 F.3d 473, 481 (7th Cir. 1996).

### B. Morrow's Retaliation Claims

Donahoe argues that Morrow's retaliation claims fail for several reasons. The Court need not address all of the reasons, however, because it is clear that none of the actions the USPS took against Morrow constitute materially adverse actions. Under both the direct and indirect method of establishing retaliation, a plaintiff must establish that she suffered a materially adverse action at the hands of her employer. *See, Cloe v. City of Indianapolis,* 712 F.3d 1171, 1180 (7th Cir. 2013) (direct method); *Bellino v. Peters,* 530 F.3d 543, 551 (7th Cir. 2008) (indirect method). For retaliation claims, a materially adverse action is one that would likely deter a reasonable employee from complaining of discrimination. *Nair v. Nicholson,* 464 F.3d 766, 768–69 (7th Cir. 2006).

An adverse action is more than something that makes an employee unhappy. *Nagle v. Vill. of Calumet Park,* 554 F.3d 1106, 1116 (7th Cir. 2009). Instead, as a general rule, there are three categories of adverse actions:

> (1) cases in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished, including termination; (2) cases in which a nominally lateral transfer with no change in financial terms significantly reduces the employee's career prospects by preventing her from using her skills and experience, so that the skills are likely to atrophy and her career is likely to be stunted; and (3) cases in which the employee is not moved to a different job or the skill requirements of her present job altered, but the conditions in which she works are

changed in a way that subjects her to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in her workplace environment.

*Id.* In her response to Donahoe's Motion, Morrow appears to rely entirely upon the third category, arguing that she was subjected to severe harassment because she "spoke out" against her employer and filed various EEOC complaints. (Pl.'s Opp. Mem., ECF No. 38 at 7). But none of the actions that Morrow complains of rises to the level of harassing, humiliating, or degrading.

Morrow first complains of a "threatening letter" that she was sent after she called in sick. But no reasonable juror could find anything threatening about the letter, which says:

> I am sending this letter to inform you that you are instructed to appear for an investigatory interview at the following location and on the date and time indicated below:
>
> Wednesday, July 20, 2011
> 8:00 AM
> Large Conference Room
> Ft. Dearborn Station
> 540 N Dearborn
> Chicago, IL 60610-9998
>
> You will be on the clock for the duration of your interview. I want to remind you that you have an obligation to cooperate in any postal investigation, pursuant to Employee and Labor Relations Manual (ELM) section 665.3.
>
> If you have any questions, please contact me at [phone number].
>
> Sincerely,
>
> Alice Chatman

(Def.'s 56.1 Stmt. of Facts, Ex. I, ECF No. 31). Although Morrow was certainly unhappy about having her employer investigate the cause of her absence, the letter contains no threatening, abusive, or otherwise untoward language. Moreover, the letter was sent to every other employee who called in sick during the same timeframe. Thus, no jury could find that Morrow was harassed because she was singled out for an investigation to which other similarly situated employees were not subjected. In sum, the sending of this letter does not constitute a materially adverse action.

The next action Morrow complains of is the "withholding" of her time card. But the facts are clear that no one "withheld" Morrow's time card. Rather, under USPS policy, when an employee calls in sick, that employee's time card is placed in the Attendance Control Office for the employee to retrieve upon returning to work. The policy appears to serve the purpose of ensuring that employees who miss work fill out the PS 3971 forms regarding their absence. The USPS followed this policy evenly across all employees who called in sick during the same time, yet Morrow chose not to retrieve her time card. That choice can hardly constitute a materially adverse action. Morrow points to no case that found similar conduct to constitute a materially adverse action, and the Court is aware of none. Rather, this is the type of "trivial personnel action" that does not give rise

to a retaliation claim.  *See, Lewis v. City of Chicago,* 496 F.3d 645, 653 (7th Cir. 2007).

The final action that Morrow claims is materially adverse is close, but no cigar.  Morrow complains that she was initially unpaid for her work on July 24 and for the two hours she left early on July 28.  Although not receiving pay for one's work would certainly constitute a materially adverse action, Morrow eventually received the pay she was owed.  Her real beef, then, is with the delay in her pay.  But the delay was due to Morrow's own failure to fill out the forms that all USPS employees are required to complete in order to receive pay under Morrow's circumstances.  For July 24, Morrow failed to complete the PS 1260 form described above.  And Morrow must have known that this form was necessary because she filled out the same form to get paid for July 20 through 22.  When she finally completed the proper form, Morrow was paid.  The same is true for July 28; Morrow knew of the form she was required to complete, and once she completed that form, she was paid.  A slight delay in pay pursuant to a company policy that is applied evenhandedly is not a materially adverse action for retaliation purposes.  *See, id.*

Because none of the USPS actions that Morrow complains of constitute a materially adverse action, Morrow has failed to establish a *prima facie* case of retaliation.  *See, Cloe,* 712

F.3d at 1180; *Bellino,* 530 F.3d at 551. The Court must, therefore, grant Donahoe's Motion for Summary Judgment.

## IV. CONCLUSION

For the reasons stated herein, Donahoe's Motion for Summary Judgment [ECF No. 29] is granted.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　　United States District Court

Dated:5/29/2015